IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JEFFERY KELLY                                                                                  PLAINTIFF

v.                                         CIVIL NO. 10-5146

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Jeffery Kelly, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his current application for SSI on August 7, 2007, alleging an inability to work since March 1, 2005,[1] due to osteoarthritis, depression, anxiety, degenerative disc disease of the knees and hands, and poor short-term memory. (Tr. 83, 181). An

---

[1] The Court notes that Plaintiff, through his attorney, amended his alleged onset date to April 20, 2009. (Tr. 32,172). The Court also notes that while the record indicates Plaintiff worked full-time at the Salvation Army in all of 2008 and part of 2009, those earnings were not included in the earnings report run in February of 2009. (Tr. 159-166).

AO72A
(Rev. 8/82)

administrative hearing was held on May 20, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 17-61). A vocational expert also testified at this hearing.

By written decision dated November 9, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 85). Specifically, the ALJ found Plaintiff had the following severe impairments: osteoarthritis in his knees, obesity, a back disorder, a mood disorder, and polysubstance dependence. However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 86-87). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 416.967(a) except he cannot perform sustained driving, climb scaffolds, ladders and ropes, crawl, kneel and balance, and he must avoid working at unprotected heights and around dangerous equipment. In addition, the claimant can only occasionally climb ramps and stairs, stoop, bend and crouch. The claimant is further limited and can perform work that involves only non-complex, simple instructions with little judgment and work that is routine, repetitive and learned by rote with few variables. Lastly, the claimant can perform work that involves only superficial contact incidental to work with the public and coworkers and supervision that is concrete, direct and specific.

(Tr. 88). With the help of a vocational expert, the ALJ determined Plaintiff could perform other work as a production assembler and an address clerk. (Tr. 93).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on June 24, 2010. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10,11).

**II.     Evidence Presented:**

At the time of the administrative hearing before the ALJ on May 20, 2009, Plaintiff testified that he was forty-five years of age and obtained a tenth grade education. (Tr. 22-23). Plaintiff testified that he had earned his GED. (Tr. 23). Plaintiff testified that in 2008 he started working full-time for the Salvation Army as the housing manager. (Tr. 29-31). The record reflects Plaintiff's past relevant work consists of work as a front desk agent for a lodging facility, a restaurant cook, a fast food cook, and a supervising chef. (Tr. 34-35).

Prior to the relevant time period of April 20, 2009, through November 9, 2009, the record reflects Plaintiff sought medical treatment for a variety of problems related to his knees, bumps under skin on his chest, a chest contusion, a rash, a history of right hand surgery and pain, abrasions and contusions following several motor vehicle accidents, high blood pressure, compression fractures to the spine, an enlarged heart, chest pain, earaches, sinus problems, heartburn, abdominal surgery to remove a foreign object and to repair an intestine perforation, a right foot injury, bronchitis, osteoarthritis, ankle pain, plantar fasciitis, a thumb laceration, depression, and a mood disorder. (Tr. 242-243, 249-273, 328-419, 429-430, 432-460, 462-575, 577-671, 673-686, 688-700, 702-714).

The record does not contain any medical evidence during the relevant time period; however, some of the records listed above will be more detailed below.

On November 16, 2006, Plaintiff complained of bilateral knee pain, left greater than right. (Tr. 427-428). Dr. Christopher A. Arnold noted Plaintiff injured his knee in 1984 when he twisted his knee and tore some ligaments. Plaintiff reported that before he had looseness in his knee but that now he had pain. Plaintiff reported his knee pain was interfering with his daily

activities and making it hard for him to work. Plaintiff also reported off-and-on right knee pain but that pain was nothing like his left knee. Dr. Arnold noted Plaintiff was employed as a chef but was unable to work because of his severe knee pain. Dr. Arnold noted that a review of radiographs of Plaintiff's left knee revealed advanced arthrosis about the lateral joint approaching bone-on-bone with a well-preserved medial joint; and Plaintiff's right knee revealed some early medial joint space narrowing. Dr. Arnold diagnosed Plaintiff with the following:

> 1. Right knee pain secondary to early arthrosis. This is fine. We will observe this. We will give him some quadsets, glucosamine and good shoe wear. It may ultimately come to an injection. It may come to another clean-out. However, he is currently doing fine.
>
> 2. Left knee pain.
>
> This is disabling for him. He cannot work. He has pain with rest as well as daily activities. He has failed exercises, anti-inflammatories and injections. I told him the next step is to sort out if this is coming more from arthritis, in which event I could recommend visco supplementation, or if it is coming from a medial meniscus tear, in which event a scope could help him. I think the only way to sort this out is with an MRI, and I have recommended that he get this.
>
> The biggest problem is that he is 42-years of age. He is employed as a chef and he is unable to stand for long periods of time. He cannot squat, he cannot climb and he cannot stand for longer than 30 minutes. In my opinion, I think he needs to be disabled with regard to his current work until he gets his knee fixed. I would recommend getting disability for his knee, get an MRI and then we will make recommendations about where to go from that be it visco supplementation or arthroscopy.

(Tr. 428). Dr. Arnold noted Plaintiff should return to his office in about two months.

On November 12, 2007, Plaintiff underwent a mental diagnostic evaluation performed by Dr. Scott McCarty. (Tr. 244-247). Plaintiff reported that he began outpatient counseling at OGC (Ozark Guidance Center, Inc.) in July 2007, but that he could not attend regularly due to unreliable transportation. Plaintiff was not taking any medication for his mental impairments.

-4-

Plaintiff reported a history of legal involvement that included 15-20 incarcerations. Plaintiff reported that he had started working at the Salvation Army in May of 2007, and that he was starting to have increased irritability with consumers. Plaintiff reported a history of heavy alcohol use.

Upon observation, Dr. McCarty noted Plaintiff was alert and fully oriented. Plaintiff was able to recall his address, social security number, four recent presidents, five large cities, and the number of weeks in a year, but could not remember the current governor of Arkansas. Dr. McCarty diagnosed Plaintiff with a dysthymic disorder, rule out alcohol dependence; and an antisocial personality disorder with borderline features (primary). Dr. McCarty noted that Plaintiff's psychological issues did not appear to present limitations with Plaintiff's personal responsibility/activities of daily living. Dr. McCarty noted that Plaintiff appeared capable of communicating and interacting in a socially adequate and intelligible manner. However, Dr. McCarty noted that Plaintiff's depressive isolation and personality issues would result in marked impairments in his capacity to interact in a socially adequate way and in responding appropriately to supervisors and coworkers. With regard to coping capacity, Dr. McCarty noted that Plaintiff exhibited good tracking without significant slowing that suggested that he possessed sufficient capacity for the typical mental/cognitive demands of basic work-like tasks. However, Dr. McCarty opined that Plaintiff's poor frustration tolerance from his personality disorder would result in marked limitation in this area. Dr. McCarty noted that Plaintiff appeared capable of understanding, remembering and carrying out instructions. Dr. McCarty opined that Plaintiff's ability to attend and sustain concentration on basic tasks would be mildly to moderately limited in this area. Dr. McCarty noted Plaintiff exhibited adequate persistence throughout the

evaluation that suggested sufficient capacity to persist at tasks until completion. However, Dr. McCarty noted Plaintiff's antisocial personality issues would lead to marked impairments with persistence. Dr. McCarty noted Plaintiff exhibited good processing speed and a sufficient ability to complete tasks within an acceptable time frame without any significant slowing. However, Dr. McCarty noted Plaintiff's personality issues would likely result in significant impairments in this area and in Plaintiff's ability to respond appropriately to work pressure. Dr. McCarty opined that Plaintiff evidenced adequate cooperation and effort.

On November 16, 2007, Plaintiff underwent a general physical examination performed by Dr. Randy Duane Conover. (Tr. 310-316). Plaintiff reported that his main difficulty with working was his ability to stand, sit and walk. Plaintiff reported his medication consisted of Ibuprofen. Plaintiff reported he smoked one package of cigarettes a day. Dr. Conover noted Plaintiff had a full range of motion of his cervical and lumbar spine and no muscle spasm. With the exception of limitation with flexion of the knees, Plaintiff exhibited a normal range of motion in his extremities. Dr. Conover found no evidence of muscle weakness, muscle atrophy or sensory abnormalities. Plaintiff was noted to have a limp to the left with a short gait. Upon a limb function evaluation, Dr. Conover reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip ninety-five plus percent; to oppose thumb to fingers; to pick up a coin; to stand and walk without assistive devices; to walk on heel and toes; and that he partially attempted to squat and arise from a squatting position. Dr. Conover diagnosed Plaintiff with osteoarthritis, depression, anxiety, chronic obstructive pulmonary disease, peptic ulcer disease, a history of coronary artery disease, and a history of a compression fracture of the lumbar spine per the patient. Dr. Conover opined Plaintiff could handle, finger, see, hear and speak. Dr.

AO72A
(Rev. 8/82)

Conover opined Plaintiff was moderately limited in his ability to walk, stand, lift and carry; and mildly limited in his ability to sit.

On November 27, 2007, Plaintiff underwent a Functional Capacity Evaluation to determine his functional status. (Tr. 274-287). Plaintiff was referred with reports of on-going left and right knee pain, left ankle and foot pain, right wrist pain, and lumbar pain. Plaintiff reported that Dr. Arnold told him he needed a total knee replacement. Plaintiff reported he never experienced relief from his pain. Plaintiff reported he did not have to return to Dr. Arnold. Plaintiff reported he did not have the money to go to the doctor or to get prescription pain medication. Plaintiff's functional limitations were as follows:

> Mr. Kelly demonstrates functional limitations with material handling activities as he exhibits the ability to lift up to 20 lbs. Bi-manually from floor to shoulder level. Mr. Kelly completed all lifting activities with compensatory movement patterns with his right foot forward and his weight shifted over onto his right side as to help relieve the stresses on his lumbar region and left leg. Mr. Kelly is limited in his ability to lift/carry on no more than an Occasional basis even with negligible amounts of weight. Mr. Kelly demonstrates poor tolerance to all general mobility tasks including, balancing, prolonged walking, carrying and climbing stairs. He did not demonstrate the ability to adequately perform the Crouching or Kneeling tasks due to his left knee condition. Mr. Kelly does require a change from standing to sitting after 15 minutes of continuous standing and requires frequent breaks throughout the workday. Mr. Kelly demonstrates decreased knee, right wrist and left ankle AROM and demonstrates guarded movement patterns with these areas.

(Tr. 274-275). Mr. Doin Dahlke, M.ED, ATC/L, CFE concluded that Plaintiff demonstrated a low level of function and poor tolerance to work activities. Mr. Dahlke opined Plaintiff would be unable to work over the course of an entire eight-hour workday.

On December 3, 2007, Dr. Dan Donahue, a non-examining medical consultant, completed a psychiatric review technique form indicating Plaintiff had moderate restrictions of

his activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of concentration persistence or pace; and one or two episodes of decompensation. (Tr. 290-)303. Dr. Donahue's notes indicated the following:

> 40 year-old male of citingat (sic) the Salvation Army. He is also working at this facility. Claimant has thing of antisocial behavior marked with substance abuse. For is alleging of depressed. He is receiving outpatient mental health services through Ozark Counseling Center. However his treatment appears to be fairly consistent only since of August 2007. A mental status inNovember (sic) 2007 n described moderately severe symptoms of depression, alcohol dependence, antisocial personality disorder.
>
> This claimant seems to retain the ability to perform unskilled types of work.

(Tr. 302).

On the same date, Dr. Donahue completed a mental RFC assessment stating Plaintiff had moderate limitations in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to set realistic goals or make plans independently of others. (Tr. 304-307). Dr. Donahue concluded that Plaintiff "is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision

required is simple, direct and concrete. (Unskilled)." On February 29, 2008, after reviewing the record, Dr. Kay M. Gale affirmed Dr. Donahue's December 3, 2007 assessment. (Tr. 423).

On December 13, 2007, Dr. Jim Takach, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry ten pounds, frequently lift or carry less than ten pounds; could stand and/or walk at least two hours in an eight-hour workday; could sit about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry. (Tr. 319-326). Dr. Takach opined Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl, but never climb ladders/ropes/scaffolds. Dr. Takach opined that manipulative, visual, communicative or environmental limitations were not evident. Dr. Takach made the following additional comments:

> 43 yo with a hx of obesity (BMI-41) and 2nd OA (B) knees - moderate on Xray E early OA (B) hands on Xray - at current CE: (I) antalgic gait w/o NM loss UE/LE - moderate LROM knees - allegation of past MI - no current cardiac c/o including CP/syncope or CHF - general CV exam wnl at CE Except for uncomplicated Stasis dermatitis LE. Form (sic) the available MER - he retains the ability to function with SEDENTARY work limits.

(Tr. 326). On February 29, 2008, after reviewing the record, Dr. Jerry Thomas affirmed Dr. Takach's December 13, 2007 assessment. (Tr. 426).

### III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 416.920.

**IV.	Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

**A.	Plaintiff's Impairments:**

The ALJ found that Plaintiff had the following severe impairments: osteoarthritis in his knees, obesity, a back disorder, a mood disorder, and polysubstance dependence. However, the ALJ found that Plaintiff's hand impairments, left-sided chest pain and right foot impairment were not severe. (Tr. 85-86). The ALJ noted that while Plaintiff testified that the screws in his right wrist affected his ability to grip and grasp, during a general physical examination, Dr. Conover noted Plaintiff had full range of motion in his hands and his grip strength was noted to be ninety-five plus percent. The ALJ further pointed out that Dr. Conover did not assess Plaintiff with any limitations in his ability to handle and finger. A review of the record also failed to show that Plaintiff sought treatment during the relevant time period for his alleged disabling hand problems. The ALJ determined that Plaintiff's hand impairment would not have more than a minimal effect on his ability to work and was therefore not a severe impairment.

With regard to Plaintiff's left-sided chest pain, the ALJ pointed out that Dr. Conover's cardiovascular examination was within normal limits except for uncomplicated stasis dermatitis[2] of the lower extremities. The ALJ also pointed out that the relevant medical evidence failed to show Plaintiff's complaints of chest pain, syncope or congestive heart failure. The ALJ determined that Plaintiff's cardiac impairment would not have more than a minimal effect on his ability to work and was therefore not a severe impairment.

With regard to Plaintiff's right foot pain, the ALJ noted that the medical evidence reflects Plaintiff sought treatment in February of 2008, almost one year prior to the relevant time period, for constant right foot pain. (Tr. 328-332). The medical notes revealed that Plaintiff had no deformity of the right foot and full range of motion. Plaintiff did have some heel tenderness. Plaintiff was diagnosed with plantar fasciitis and instructed to follow-up with his doctor if his condition did not improve. The ALJ pointed out that there was no evidence revealing that Plaintiff complained of this foot pain again during the relevant time period. The ALJ determined that Plaintiff's right foot impairment would not have more than a minimal effect on his ability to work and was therefore not a severe impairment.

After reviewing the evidence of record, the Court finds substantial evidence supporting the ALJ's determination that Plaintiff's hand impairment, left-sided chest pain and right foot impairment were not severe impairments. Kirby v. Astrue, 500 F.3d 705, 707 -708 (8th Cir. 2007) (An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities).

---

[2] Stasis dermatitis is defined as a chronic, eczematous type caused by venous insufficiency in the lower limb. See Dorland's Illustrated Medication, Dictionary at 503, 31st Edition (2007).

### B. Subjective Complaints and Credibility Analysis:

We now address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that his impairments were disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's knee impairment, the ALJ noted that Plaintiff had a longstanding history of complaints of knee pain and apparently underwent right knee surgery in the past. Medical evidence dated November 16, 2006, showed Plaintiff had advanced arthrosis about the lateral joint approaching bone-on-bone, but a well preserved medial joint of the left knee; and some early medial joint space narrowing of the right knee. At that time, Dr. Arnold recommended an MRI of Plaintiff's left knee to determine if Plaintiff's pain was a result of arthritis or a medial meniscus tear which would warrant a scope. The ALJ pointed out that the

record failed to show Plaintiff underwent this scan. Plaintiff also underwent x-rays of his left knee in January of 2008, which revealed no evidence of fracture, displacement or periosteal injury. (Tr. 335). The medical record revealed that in February of 2008, Plaintiff denied experiencing any knee pain when he was treated in the emergency room for his right foot. (Tr. 331). Plaintiff did report knee pain in November of 2008, after reporting that he had been hit by a car, and at that time x-rays revealed left knee degenerative changes and no acute bony abnormality; and right knee mild narrowing of the medial joint space and no acute fracture. The record further revealed that Plaintiff had not sought any medical treatment since November of 2008. See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure seek treatment inconsistent with allegations of pain). After reviewing the entire evidence of record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling knee impairment.

While Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). Furthermore, the record reflects that in August of 2007, his therapist at Ozark Guidance Center gave Plaintiff a phone number to the free clinic so that Plaintiff could pursue healthcare for his knees and joints. (Tr. 258). However, it does not appear that Plaintiff attempted to call the clinic until sometime in 2008. The record shows that Plaintiff testified at the administrative hearing that he had been given a number to the free clinic by someone at Washington Regional who had treated him after he was hit by a car, which would

have been in November of 2008, and that he called the number once and that the person he was told to speak with was rude and said that they could not help him. (Tr. 48). The Court is hard pressed to believe that someone experiencing constant severe pain would not attempt to seek treatment from a free clinic more than once. The record also shows that while Plaintiff indicated he could not afford to fill a prescription or to seek treatment, he was able to purchase alcohol and cigarettes.

With regard to Plaintiff's back pain, the record reflects Plaintiff had a history of complaints for back pain as a result of motor vehicle accidents and an accident while horseback riding; however, these incidents occurred long before the relevant time period. The ALJ pointed out that the record revealed only intermittent complaints of back pain. A November of 2008 CT scan of Plaintiff's lumbar spine revealed a mild chronic wedge deformity of the L2 vertebral body, and no evidence of an acute fracture. Thus, while Plaintiff may indeed experience some degree of pain due to his back impairment, the Court finds substantial evidence of record supporting the ALJ's finding that Plaintiff does not have a disabling back impairment. See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain).

With regard to Plaintiff's obesity, while Plaintiff was noted to have a history of obesity, the medical evidence failed to show that any treating or examining physician limited Plaintiff's activities due to his obesity. The Court finds the ALJ sufficiently reviewed the record and that the ALJ's decision properly discussed Plaintiff's obesity. Heino v. Astrue, 578 F.3d 873, 881

(8th Cir. 2009)(the Court held that when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).

As for Plaintiff's alleged depression and mood disorder, there is no medical evidence of record revealing that Plaintiff sought on-going and consistent treatment for his alleged mental impairments during the relevant time period. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. The ALJ properly pointed out that while Plaintiff originally claimed an onset date of March 1, 2005, Plaintiff amended his onset date to April 20, 2009, because he had worked full-time for the Salvation Army during all of 2008 and part of 2009. Plaintiff testified at the May of 2009 administrative hearing that he was doing social work with the homeless by housing them, feeding them, and making sure everyone followed the rules. (Tr. 29). Plaintiff testified his job responsibilities also consisted of the following:

> I sit at a desk and work on the computer. I have to do hourly rounds around the property. I had to get up and go outside and make sure everybody was doing what they were supposed to and nobody was on the property that wasn't supposed to be on the property and make sure that everybody was sober. I could walk out the front desk and out the front door and down about 30 feet and go sit down in the smoking area and then get back up and go back to my desk.

(Tr. 43). Plaintiff testified that sometimes the people in an alcohol and drug program would sit with him at the front desk and would sometimes walk the rounds for him and report back to him. (Tr. 44). The ALJ pointed out that while Plaintiff stopped performing this work in April of 2009, Plaintiff testified that he had been suspended indefinitely from his job, not because of his

impairments, but because he failed to report a fellow employee's use of alcohol. (Tr. 44-45). Plaintiff also testified at the administrative hearing that he would do some household chores and would watch his roommate's children at times. (Tr. 40-41, 54).

With regard to the testimony of Plaintiff's friend, the ALJ properly considered his testimony but found it unpersuasive. This determination was within the ALJ's province. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

    C.    **RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.

Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In finding Plaintiff able to perform sedentary work with limitations, the ALJ considered Plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluations of non-examining medical examiners. Plaintiff contends the ALJ improperly disregarded the opinions of Drs. McCarty and Arnold, and Mr. Dahlke.

In determining Plaintiff's RFC the ALJ noted that in 2007, Dr. McCarty assessed Plaintiff with having marked limitations and one significant limitation of adaptive functioning, and found that this assessment appeared to be based on Plaintiff's self-reports. The ALJ pointed out that Dr. McCarty found Plaintiff was not as limited during his actual evaluation of Plaintiff, but when Dr. McCarty included Plaintiff's self-reported limitations, Plaintiff was found to be markedly limited in certain areas of adaptive functioning. Due to these inconsistencies, as well as inconsistencies with the record as a whole, the ALJ gave Dr. McCarty's opinion less weight. See Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir.2000) ("We [will] uph[o]ld an ALJ's decision to discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."). The record also shows that Plaintiff was able to work full-time in 2008 and part of 2009 as a housing manager for the Salvation Army.

With regard to Dr. Arnold, the medical evidence revealed that in November of 2006, after evaluating Plaintiff, Dr. Arnold opined Plaintiff was "disabled with regard to his current work until he gets his knee fixed." At the time of the evaluation in 2006, Plaintiff had been working

as a chef that required him to stand for long periods of time. The ALJ determined that Dr. Arnold's opinion that Plaintiff could not perform his "current work" was consistent with the ALJ's determination that Plaintiff could not perform his past relevant work.

The ALJ also addressed the Functional Capacity Evaluation and pointed out that while Mr. Dahlke concluded, in November of 2007, that Plaintiff did not demonstrate the necessary physical capacity to allow him to work over the course of an entire eight-hour workday, the record revealed Plaintiff worked full-time for the Salvation Army in all of 2008 and part of 2009. The ALJ found properly found that the Functional Capacity Evaluation was inconsistent with the evidence of record that revealed Plaintiff worked full-time in 2008 and part of 2009 for the Salvation Army.

Based on our above discussion of the medical evidence and Plaintiff's activities, the Court finds substantial evidence of record to support the ALJ's RFC determination.

**D.     Hypothetical Question to the Vocational Expert:**

We now look to the ALJ's determination that Plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997); Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff was not disabled as he was able to perform work as a production assembler and an address clerk. See Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V.     Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 25th day of August 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)